IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARIZONA MINING ASSOCIATION )
5150 North 16th Street Suite B-134 )
Phoenix, AZ 85016 )
 )
NEW MEXICO MINING ASSOCIATION )
1470 Saint Francis Drive )
Santa Fe, NM 87505 )
 )
and )
 )
PHELPS DODGE BAGDAD, INC. )
1 Main Street )
Bagdad, AZ 86321 )
 )
      Plaintiffs, )
 )
  v. )  Civil Action No. _____
 )
STEPHEN L. JOHNSON )
Administrator )
United States Environmental Protection Agency )
Ariel Rios Building )
1200 Pennsylvania Avenue, NW )
Mail Code 1101A )
Washington, DC 20460 )
 )
and )
 )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY )
Ariel Rios Building )
1200 Pennsylvania Avenue, NW )
Washington, DC 20460, )
 )
      Defendants. )
 )

**COMPLAINT**

1. Plaintiffs Arizona Mining Association, New Mexico Mining Association, and Phelps Dodge Bagdad, Inc. bring this action under section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, seeking review of final action of Defendants Stephen L. Johnson and the United States Environmental Protection Agency. Plaintiffs seek an order holding unlawful, vacating, and setting aside certain final actions taken by the Defendants under section 313 of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11023. If left undisturbed, the challenged actions will subject chemically unaltered, naturally occurring compounds at Plaintiffs' mining facilities to burdensome federal reporting requirements, contrary to the intent of Congress, and with no benefit to human health or the environment.

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Court has the authority to grant the declaratory and other relief sought herein pursuant to 28 U.S.C. § 2201 and 5 U.S.C. §§ 705 and 706.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) in that Defendant Stephen L. Johnson is an officer or employee of the United States who is being sued in his official capacity as the Administrator of the United States Environmental Protection Agency and who resides in the District of Columbia. Venue is also proper in that Defendant United States Environmental Protection Agency is an agency of the United States that resides in the District of Columbia.

## PARTIES

4. Plaintiff Arizona Mining Association ("AMA") is a non-profit business league, whose members include companies engaged in exploration and mining activities in Arizona. AMA has Article III and prudential standing to bring this action, because one or more of its members would have standing to bring this action in their own right, the interests AMA seeks to protect herein are germane to its purpose as a business league, and neither the claims AMA asserts nor the relief AMA requests requires that an individual member of AMA participate in this action.

5. AMA's members are injured by the actions of the Defendants because they must comply with the legal interpretations embodied in Defendants' actions, or risk penalties for non-compliance. The relief requested herein would redress AMA's members' injuries. AMA's members also have prudential standing because they are within the "zone of interests" potentially regulated by EPCRA.

6. Plaintiff New Mexico Mining Association ("NMMA") is a trade association whose members include companies that explore, produce and refine metals, coal and industrial materials. NMMA has Article III and prudential standing to bring this action, because one or more of its members would have standing to bring this action in their own right, the interests NMMA seeks to protect herein are germane to its purpose as a trade association, and neither the claims NMMA asserts nor the relief NMMA requests requires that an individual member of NMMA participate in this action.

7. NMMA's members are injured by the actions of the Defendants because they must comply with the legal interpretations embodied in Defendants' actions, or risk penalties for non-compliance. The relief requested herein would redress NMMA's members' injuries.

NMMA's members also have prudential standing because they are within the "zone of interests" potentially regulated by EPCRA.

8. Plaintiff Phelps Dodge Bagdad, Inc. ("PDBI") is engaged in the business of copper mining. PDBI has Article III standing to bring this action. PDBI is injured by the actions of the Defendants because PDBI must comply with the legal interpretations embodied in Defendants' actions, or risk penalties for non-compliance. The relief requested herein would redress PDBI's injuries. PDBI also has prudential standing because it is within the "zone of interests" potentially regulated by EPCRA.

9. Defendant Stephen L. Johnson is the Administrator of the United States Environmental Protection Agency, and is being sued in his official capacity. The Administrator has the statutory authority to implement EPCRA.

10. Defendant United States Environmental Protection Agency (hereinafter, "EPA") is an agency of the United States responsible for the administration and enforcement of EPCRA. EPA took the regulatory actions challenged herein.

**STATUTORY AND REGULATORY BACKGROUND**

11. Section 313 of EPCRA requires facilities in designated industrial categories to submit annual toxic chemical release forms for toxic chemicals that are "manufactured, processed, or otherwise used" in quantities exceeding designated thresholds. 42 U.S.C. § 11023. The statute defines "manufacture" as "to produce, prepare, import, or compound a toxic chemical." 42 U.S.C. § 11023(b)(1)(C)(i). The statute defines "process" as "the preparation of a toxic chemical, *after its manufacture*, for distribution in commerce . . . ." 42 U.S.C. § 11023(b)(1)(C)(ii) (emphasis added).

12. Section 313 of EPCRA also requires the Administrator of EPA to maintain a national toxic chemical inventory, based on the data in the toxic chemical release forms. 42 U.S.C. § 11023(j). EPA refers to this database as the "Toxics Release Inventory," so the reporting requirements of section 313 are now commonly referred to as the "TRI" (for "Toxics Release Inventory") requirements.

13. In 1988, EPA promulgated the first major rule to implement the TRI requirements. 53 Fed. Reg. 4500 (Feb. 16, 1988) (codified at 40 C.F.R. part 372). In the preamble to that rule, EPA interpreted the term "manufacture" to focus on "creation" of chemicals. *See* 53 Fed. Reg. 4504 (definition of "manufacture" was meant "to cover those situations in which a listed toxic chemical is created (intentionally or unintentionally)").

14. The 1988 rule included a *de minimis* exemption. 53 Fed. Reg. 4509 (codified at 40 C.F.R. § 372.38(a)). The *de minimis* exemption allows facilities not to count certain very low concentrations of toxic chemicals in mixtures in determining what must be reported.

15. Originally, metal mining facilities were not subject to the TRI requirements. In 1997, EPA promulgated a rule that subjected metal mining facilities to the TRI requirements. 62 Fed. Reg. 23834 (May 1, 1997). In the preamble to the 1997 rule, EPA expressed its interpretation that naturally occurring chemicals in metal ores have been "manufactured" because they have been created or "produced" by nature. 62 Fed. Reg. 23857 (May 1, 1997). Thus, EPA concluded that extraction and beneficiation of metal ores constitutes "processing" because those activities involve preparation of toxic chemicals *after* their "manufacture" by nature. *Id.*

16. EPA's natural creation theory was challenged in litigation in two federal district courts, including this Court. *Barrick Goldstrike Mines, Inc. v. Whitman*, 260 F. Supp. 28

5

(D.D.C. 2003) ("*Barrick*"); *National Mining Ass'n v. Browner*, 2001 U.S. Dist. LEXIS 915 (D. Colo. 2001) ("*NMA*"). In its briefs in *Barrick*, EPA further explained why it had interpreted "manufacture" to be limited to "create":

> Congress used the word "prepare" in the definition of "manufacture" and the word "preparation" in the definition of "process." Recognizing this overlap in the definitions, EPA interpreted "manufacture" and "process" in a manner that avoids overlap in the activities covered by these terms, while simultaneously giving full meaning to each term. Therefore, within the definition of "manufacture" EPA reads the terms "prepare" and "produce" as synonymous with "to create," and in the definition of "processing," EPA reads the term "preparation" to mean "to make ready." This distinction avoids the classification of identical activities as both "processing" and "manufacturing."

Mem. Supp. EPA Cross-Mot. Summ. J. at 33, filed Nov. 17, 2000 in *Barrick*. EPA provided substantially the same explanation of its interpretation in its briefs in *NMA*.

17.   In January 2001, the court in *NMA* held, contrary to EPA's natural creation theory, that undisturbed, naturally occurring chemicals in metal ores cannot be considered to be "manufacture[d]" within the meaning of the TRI program. As a result, extraction and beneficiation activities cannot be considered to "process" naturally occurring chemicals, because those activities do not occur *after* "manufacture" of those naturally occurring chemicals.

## CLAIM I

### THE DEFENDANTS SIGNIFICANTLY REVISED THEIR DEFINITIVE, AUTHORITATIVE INTERPRETATION OF A LEGISLATIVE RULE, WITHOUT PRIOR NOTICE AND OPPORTUNITY TO COMMENT.

18.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 17 of this Complaint.

19.   Following the January 2001 decision in *NMA*, described in paragraph 17 of this Complaint, EPA adopted a *new* interpretation of "manufacture" in letters to representatives of the National Mining Association, dated June 14 and June 28, 2001. Contrary to EPA's previous

6

interpretation, as described in paragraphs 13, 15 and 16 of this Complaint, under EPA's new interpretation, "manufacture" is not limited to creation (whether by nature or otherwise). Thus, according to EPA's new interpretation, extraction and beneficiation of metal ores can be "manufacture" – even where those activities do not create toxic chemicals -- because "manufacture" includes "prepare" in a broad sense and extraction and beneficiation "prepare" naturally occurring chemicals.

20. The letters referred to in the immediately preceding paragraph constituted final agency action under the APA. EPA has published its position in those letters on its website. EPA has reaffirmed its position in those letters in correspondence to Plaintiff PDBI. Indeed, EPA has threatened to enforce its position against Plaintiff PDBI.

21. This Court found in *Barrick* that EPA's original interpretation had "foreclosed" an interpretation of "manufacture" as including extraction or beneficiation of naturally occurring chemicals "by limiting the scope of the term 'prepare' as it appears in the definitions of 'manufacture' and 'process.'" *Barrick*, 260 F. Supp. 2d at 42. Thus, EPA's action described in paragraph 19 of this Complaint significantly revised a definitive, authoritative interpretation of a legislative rule.

22. EPA took the action described in paragraph 19 of this Complaint without providing the public with prior notice and an opportunity to comment.

23. Thus, EPA's action described in paragraph 19 of this Complaint violated the procedural requirements of the APA, 5 U.S.C. § 553. Accordingly, that action is void and should be vacated.

## CLAIM II

### THE DEFENDANTS' INTERPRETATION THAT EXTRACTION AND BENEFICIATION OF NATURALLY OCCURRING CHEMICALS IN METAL ORES IS "MANUFACTURE" OR "PROCESS" IS CONTRARY TO LAW.

24. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 23 of this Complaint.

25. In its letter to the National Mining Association of June 14, 2001, referred to in paragraph 19 of this Complaint, EPA said:

> In the near future the Agency intends to initiate rulemaking to adopt a revised interpretation that will allocate extraction and beneficiation activities between these two statutory terms. However, until this rulemaking is completed, EPA will not definitively resolve whether a particular activity is best characterized as "manufacturing" or "processing." For now, individual facilities will remain responsible for determining whether their preparation of the toxic chemicals in the ore is better characterized as "manufacturing" or "processing."

EPA has not yet initiated the rulemaking described in its letter of June 14, 2001. In its regulatory agenda published in the Federal Register on December 11, 2006, EPA announced its intention to publish a proposed rulemaking in December 2009 in order to clarify TRI reporting obligations under EPCRA section 313 for the metal mining activities of extraction and beneficiation, with the final rulemaking complete by March 2010. 71 Fed. Reg. 73848, 73954 (Dec. 11, 2006).

26. In EPCRA, Congress spoke directly to the question of whether extraction and beneficiation of undisturbed ores constitute "process[ing]," and manifested its intent that such activities not constitute "processing." The court in *NMA* held that "Because naturally occurring undisturbed ores are not 'manufactured' within the meaning of [EPCRA], the extraction and beneficiation thereof cannot constitute processing." 2001 U.S. Dist. Lexis, 915 at *20-21. This Court reached a substantially similar conclusion in *Barrick.* 260 F. Supp. 2d at 42-43.

27.     Congress also spoke directly to the question of whether extraction and beneficiation of naturally occurring chemicals in metal ores constitute "manufactur[ing]" as the term is used in EPCRA, and manifested its intent that such activities not constitute "manufactur[ing]." In the alternative to the preceding sentence, EPA's interpretation of "manufacture" as including extraction and beneficiation of naturally occurring chemicals in metal ores is neither a permissible nor a reasonable interpretation of the statute.

28.     Accordingly, EPA's interpretation in its letter to the National Mining Association of June 14, 2001, that extraction and beneficiation of naturally occurring chemicals in metal ores can be "manufacture" or "process" within the meaning of EPCRA is contrary to law and should be vacated.

**CLAIM III**

**THE DEFENDANTS' INTERPRETATION OF THE "DE MINIMIS" EXEMPTION IN THE TRI RULES AS NOT APPLYING TO NATURALLY OCCURRING CHEMICALS IN COPPER FLOTATION TAILINGS IS CONTRARY TO LAW AND WAS ADOPTED IN VIOLATION OF THE PROCEDURAL REQUIREMENTS OF THE APA.**

29.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 28 of this Complaint.

30.     Beneficiation activities at copper mining facilities include a process known as copper flotation. Copper flotation "tailings" is the material remaining after as much copper has been removed as can technologically be extracted by the copper flotation process. Copper flotation tailings are a combination of naturally occurring chemicals that have not undergone any chemical reaction. Nor is the combination the result of any chemical reaction.

31.     The *de minimis* exemption in 40 C.F.R. § 372.38(a) applies to mixtures. "Mixture" is defined, in relevant part, as "any combination of two or more chemicals, if the combination is not, in whole or in part, the result of a chemical reaction." 40 C.F.R. § 372.3.

32.     In a letter to Plaintiff PDBI, dated August 4, 2004, EPA took the position that copper flotation tailings are not eligible for the *de minimis* exemption in 40 C.F.R. § 372.38(a), even though neither the tailings nor their constituents are the product of a chemical reaction. That letter, and EPA's adoption of the position taken therein, constituted final agency action under the APA.

33.     EPA's interpretation that copper flotation tailings are not eligible for the *de minimis* exemption is plainly erroneous and inconsistent with the regulation. EPA's interpretation is also a nonobvious and unanticipated reading of the regulation that was adopted without prior notice to the public and opportunity to comment.

34.     In *Barrick*, this Court upheld EPA's interpretation that certain tailings from gold mining operations are not eligible for the *de minimis* exemption. 260 F. Supp. 2d at 36-38. However, copper flotation tailings differ materially from the gold tailings at issue in *Barrick*.

35.     Because EPA's interpretation that copper flotation tailings are not eligible for the *de minimis* exemption is plainly erroneous and inconsistent with the regulation, EPA's interpretation is contrary to law and should be vacated. Additionally, because EPA's interpretation is the equivalent of a legislative rule that was adopted without prior notice to the public and opportunity to comment, EPA's action in adopting the interpretation violated the procedural requirements of the APA, 5 U.S.C. § 553. Accordingly, that action is void, and should be vacated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor, and:

1. Declare EPA's action in adopting a revised interpretation of the term "manufacture" in the TRI rules without following requisite notice and comment procedures to be in violation of the APA, vacate EPA's action, and enjoin EPA from enforcing its revised interpretation;

2. Declare EPA's interpretation that extraction and beneficiation of naturally occurring chemicals in metal ores can be "manufacture" or "process" within the meaning of EPCRA to be contrary to law, vacate EPA's interpretation, and enjoin EPA from enforcing its interpretation;

3. Declare EPA's interpretation that copper flotation tailings are not eligible for the *de minimis* exemption in 40 C.F.R. § 372.38(a) to be contrary to law, vacate EPA's interpretation, and enjoin EPA from enforcing its interpretation;

4. Declare EPA's action in adopting its interpretation that copper flotation tailings are not eligible for the *de minimis* exemption in 40 C.F.R. § 372.38(a) without following requisite notice and comment procedures to be in violation of the APA, vacate EPA's action, and enjoin EPA from enforcing its interpretation; and

5. Grant such other relief as the Court deems just and proper.

DATED: June 14, 2007                    Respectfully submitted,

*[signature]*

Thomas Sayre Llewellyn (D.C. Bar No. 332338)
LAW OFFICE OF
THOMAS SAYRE LLEWELLYN
5125 MacArthur Boulevard, NW  Suite 32-A
Washington, DC  20016
(202) 237-7291 (telephone)
(202) 237-7884) (facsimile)

David P. Kimball III
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, AZ  85016-9225
(602) 530-8000 (telephone)
(602) 530-8500) (facsimile)

*Attorneys for Plaintiffs Arizona Mining Association, New Mexico Mining Association, and Phelps Dodge Bagdad, Inc.*


S. David Colton
Senior Vice President and General Counsel

Michael B. Wood
Assistant General Counsel – Environmental

Freeport-McMoRan Copper & Gold Inc.
One North Central Avenue
Phoenix, AZ  85004
(602) 366-8586 (telephone)
(602) 366-7312 (facsimile)

*Attorneys for Phelps Dodge Bagdad, Inc.*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Arizona Mining Association
New Mexico Mining Association and
Phelps Dodge Bagdad, Inc.

## DEFENDANTS

Stephen L. Johnson and
United States Environmental Protection Agency

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas Sayre Llewellyn
5125 MacArthur Boulevard, NW  Suite 32-A
Washington, DC  20016
202-237-7291

ATTORNEYS (IF KNOWN)

The Honorable Alberto R. Gonzales
Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

This is an action under 5 U.S.C. 702 for review of final actions of the Defendants under the Emergency Planning and Community Right-To-Know Act.

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐

DEMAND $ _____  Check YES only if demanded in complaint

JURY DEMAND: YES ☐  NO ☒

## VIII. RELATED CASE(S) IF ANY

(See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE June 14, 2007  SIGNATURE OF ATTORNEY OF RECORD _____

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.